UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANGELA O.,[1]

        Plaintiff,

   v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 3:21-cv-00365-MC

OPINION AND ORDER

Michael J. McShane, United States District Judge:

    Angela O. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act). 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's final decision. 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff contends that the administrative law judge (ALJ) erred in rejecting her subjective symptom testimony and the opinion of her treating psychiatrist, Dr. Charles Kuttner. Because substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled, I reverse and remand the Commissioner's decision for the immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family members.

1 -- OPINION AND ORDER

**PROCEDURAL HISTORY**

In March 2017, Plaintiff filed claims for disability insurance benefits and supplemental security income. She initially alleged a disability onset date of August 1, 2010, but at the hearing amended the onset date to January 1, 2014. Plaintiff, who was born in 1977, was 36 years old on the amended onset date.

Plaintiff alleged that she was disabled by attention deficit disorder, post-traumatic stress disorder (PTSD), panic disorder, depression, and opioid abuse. After Plaintiff's claims were denied initially and on reconsideration, she received a hearing before an ALJ. In September 2019, the ALJ issued a decision finding that Plaintiff was not disabled. In July 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence . . . is 'more than a mere scintilla.' It means--and means only--'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229) (citation omitted).

In reviewing the Commissioner's decision, this court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a

specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## FACTUAL BACKGROUND

Plaintiff competed her bachelor's degree in communications at the University of Oregon. From about 2005 to 2010, she worked in public relations. Tr. 40.

Plaintiff's PTSD stems from an accident in August 2010, when she was driving home from work and struck and killed a pedestrian. Tr. 571. She did not report the accident for about 15 minutes, Tr. 319, and "ultimately pleaded guilty" to leaving the scene of an accident. Tr. 582, 456. Plaintiff served 90 days in jail. In August 2011, while serving her sentence, she told Dr. Kuttner, her treating psychiatrist, that "being in jail is actually helping her feel less guilty." Tr. 448. After her release in September 2011, she felt "horrible on returning home." Tr. 446. Plaintiff testified that after the accident, "I basically locked myself in the house for a year and was terrified." Tr. 48. More than seven years after the accident, Plaintiff almost never drives, relying on her boyfriend, public transportation, or Uber. Tr. 396.

Plaintiff began psychotherapy with Dr. Kuttner in March 2011, and continued treatment with him throughout the period of alleged disability. She usually saw him about once a month.

Dr. Kuttner diagnosed Plaintiff with "double depression," dysthymic disorder and recurrent major depression. Tr. 457. Dr. Kuttner has also diagnosed attention-deficit disorder (ADD), PTSD, panic disorder, and opioid abuse. Tr. 371, 925. Plaintiff's symptoms include anxiety, panic attacks, and "distractibility." Tr. 925.

On August 4, 2014, Plaintiff was admitted voluntarily to Providence Behavioral Health through the emergency room, complaining of suicidal ideation and depression. Tr. 317. She said she had been increasingly depressed over the last several months in part because she did not have a job and did not feel like "a contributing member of society." Tr. 317. The admitting physician, Carrie Milligan, M.D., opined that Plaintiff had a "moderate risk for suicide." Tr. 321.

Robert Gold, M.D., examined Plaintiff on August 6, 2014. Tr. 335-39. Dr. Gold noted that Plaintiff "has been engaging in self-harm behaviors, such as burning herself with a cigarette." Tr. 335. Plaintiff "suffers with a sense of worthlessness. A lot of this has to do with repercussions from her fatal motor vehicle accident." Tr. 338. Plaintiff had not been taking her prescribed medications over the previous two or three weeks. Tr. 338. Dr. Gold found that Plaintiff needed inpatient hospitalization for at least two more days. By August 7, 2014, Dr. Gold found that Plaintiff was ready to be released, although her mood remained "depressed and worried." Tr. 340.

In April 2015, Plaintiff went to the emergency room at Providence Milwaukie Hospital, suffering from a panic attack. Tr. 564. The admitting nurse reported that she was "hyperventilating and crying," saying "I can't seem to get it together." Tr. 564. She stated that she had a panic attack the previous week and went to a different hospital. Tr. 565. Plaintiff was discharged after being given Ativan and an injection of Benadryl. Tr. 566.

On February 10, 2016, Plaintiff began inpatient treatment for opioid addiction at A Better Today clinic in Scottsdale, Arizona. Tr. 482. She was discharged successfully on April 16, 2016. Tr. 482.

4 -- OPINION AND ORDER

From August 2016 to January 2017, Plaintiff worked in data entry for the Daily Journal of Commerce in Portland. Tr. 20, 44. She was terminated after being found sleeping in the office lobby after work. Tr. 44.

In February 2019, Plaintiff worked for a few weeks at Deseret Industries, hanging clothes for a thrift store run by the Mormon Church. Tr. 915. In June 2019, Plaintiff flew to Poland to teach English at a summer camp. Tr. 921. The job was to last about seven weeks, but Plaintiff flew home early because she "was unable to function." Tr. 926.

## THE ALJ'S FINDINGS ON THE FIVE-STEP INQUIRY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof for the first four steps, and the Commissioner has the burden for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Here, at step one, the ALJ found that Plaintiff had engaged in substantial gainful activity when she worked at the data entry job from August 2016 through January 2017. Tr. 20. However, because the ALJ found Plaintiff had a continuous 12-month period in which she did not engage in substantial gainful activity, the ALJ proceeded with the rest of the sequential analysis. Tr. 21.

At step two, the ALJ found that Plaintiff has the following severe impairments: attention deficit disorder, PTSD, panic disorder, depression, and opioid abuse. Tr. 21.

5 -- OPINION AND ORDER

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the impairments listed in the regulations. Tr. 21. The ALJ then found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to a work environment free of fast-paced production requirements with few changes. She is limited to no contact with the general public." Tr. 22.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a copywriter and food server. Tr. 26. The ALJ relied on the testimony of a vocational expert in making the finding at step four.

At step five, as noted above, the Commissioner has the burden of proof to show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.1999). Based on the testimony of the vocational expert, the ALJ found that Plaintiff could work as a dietary aide, a mailroom clerk, and a marking clerk. Tr. 27. The ALJ therefore concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that (1) the ALJ improperly discounted Plaintiff's subjective symptom testimony; and (2) the ALJ erred in evaluating the medical opinion of Dr. Kuttner. I agree with Plaintiff that the ALJ committed harmful error.

**I. The ALJ's Assessment of Plaintiff's Subjective Symptom Testimony**

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record."[2]  Tr. 23.  I conclude that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### A. Legal Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, as is true here, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citations omitted).

### B. Medical Evidence

The ALJ found that the medical evidence undermined Plaintiff's testimony about her subjective symptoms.  Tr. 25.  The ALJ gave "great weight" to the opinion of John Adler, Ph.D, an evaluating psychologist who submitted a report on his examination of Plaintiff in August 2018.  Tr. 25, 864-67.  The ALJ noted that although Dr. Adler did not address "specific work-

---

[2] This sentence, with slight variations, often appears in ALJs' decisions.  *See George C. L. v. Saul*, No. 20-cv-08232-RMI, 2022 WL 836301, at *6 (N.D. Cal. Mar. 21, 2022) (referring to a virtually identical sentence, the court stated, "The ALJ rejected Plaintiff's statements through the use of a frequently-used and abundantly familiar piece of boilerplate").

related functional limitations," his assessment was "generally consistent with the residual functional capacity finding." Tr. 25. The ALJ noted Dr. Adler's opinion that Plaintiff had no problems "understanding simple or complex instructions," and that her memory and concentration "showed slight impairment with more difficult tasks when a bit more anxious but her general ability was good." The ALJ also noted Dr. Adler's finding that Plaintiff's cognitive skills were sufficient for easier mental tasks or daily functioning. Tr. 25, 867.

Dr. Adler's evaluation also notes Plaintiff showed "some signs of anxiety at times, particularly on mental tasks but she was much more depressed throughout the exam." Tr. 866. Dr. Adler found that the "evidence was consistent" with Plaintiff's claims of "work impairment due to mental health problems such as anxiety and depression." Tr. 866. Dr. Adler stated, "Observed behavior was consistent with the history that she gave, and showed more depression than anxiety, although the history suggests she can have quite significant anxiety and panic, with frequent ER visits." Tr. 867. Dr. Adler found that Plaintiff "has consistent and daily problems with mood and coping with distress, social isolation, and motivation, difficulties with personal care and chores." Tr. 867. Dr. Adler's psychological evaluation, considered in its entirety, does not undermine Plaintiff's testimony about her symptoms.

In arguing that the medical record does not support Plaintiff's symptom testimony, the ALJ cited a January 2014 treatment note describing Plaintiff as stable in mood and frustrated that she had not found a writing job, and a June 2014 note stating that Plaintiff was bored and wanted to go back to work. Tr. 23; Tr. 416 (Dr. Kuttner's January 14, 2014 report stated Plaintiff "really has been feeling pretty stable in mood," although "she is crying today in session" because of her frustration about not working); Tr. 414 (Dr. Kuttner's June 12, 2014 report stated Plaintiff "really wants to go back to work"). Plaintiff's extensive treatment records include reports that

8 -- OPINION AND ORDER

she felt better and wanted to return to work, but these relatively positive reports do not discredit Plaintiff's symptom testimony. Plaintiff's demeanor and statements in the office of her long-time therapist do not show that she exaggerated her symptoms in dealing with stress in the workplace. "Interactions with treatment providers are not the equivalent of interactions with coworkers, supervisors, or the general public in a work setting." *Samuel P. v. Comm'r*, No. 20-5881, 2021 WL 5769404, at *3 (W.D. Wash. Dec. 6, 2021). Plaintiff's medical history includes several emergency room visits for panic attacks, and in-patient treatment for severe depression and for opioid addiction. As the Ninth Circuit explained in addressing similar facts, "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). I conclude that the ALJ did not support his discounting of Plaintiff's symptom testimony with clear and convincing evidence in the medical record.

### C. Plaintiff's Activities

An ALJ may consider activities of daily living in assessing a claimant's symptom allegations to (1) show a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A claimant, however, does not need to be "utterly incapacitated to be eligible for benefits" because "many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). For example, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044,

9 -- OPINION AND ORDER

1049-50 (9th Cir. 2001). An ALJ must "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (original emphasis). "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a *sustained* basis.' Occasional symptom-free periods--and even the sporadic ability to work--are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (quoting 20 C.F.R. § 404.1512(a) (emphasis added by *Lester*)).

      Here, the ALJ found Plaintiff's "pursuit of work is inconsistent with her allegation that she has been disabled since January 2014." Tr. 23. I disagree. Plaintiff's attempts to find work show that she wanted to work despite her mental impairments, not that she exaggerated her symptoms. And the record shows that when Plaintiff did find a job, her mental impairments interfered with her ability to perform the job successfully.

      For example, Plaintiff was terminated from her data entry job after she was found sleeping in the office lobby. Tr. 20. The ALJ found this "was not an unsuccessful work attempt as it did not end due to her impairments. She was let go for sleeping in the workplace, but this did not occur during work hours." Tr. 21. The ALJ's reasoning is not supported by the record. Plaintiff suffers from chronic insomnia when she is anxious. Tr. 55. Plaintiff testified that while working in the data entry job, she "was having major insomnia issues and I just couldn't keep my eyes open," and her employer told her she was terminated because she "was tired all the time." Tr. 44. Plaintiff testified that she has intrusive thoughts, including guilt about the fatal accident, that interfere with her ability to sleep or concentrate. Tr. 55 (Plaintiff testified, "if you ever accidentally take someone's life you just never get over it").

Plaintiff's job at the Deseret Industries thrift store also did not go well. She told Dr. Kuttner that the "manager initially talked with her as though she was developmentally disabled." Tr. 915. She described the job as "not very challenging," and was irritated when the manager continued to talk down to her. Tr. 918. However, even in this undemanding job, Plaintiff testified that she "would walk into work and would just be like, like sweating and -- I don't know what happens, I just get so stressed out I can't -- I mean, I, I'm gung ho about the job and then I, something, like physically manifests." Tr. 50. Plaintiff left the job after several weeks because her supervisors saw her struggling and asked her "to take some time to think about if I could do it or not." Tr. 51.

After leaving the Deseret Industries job, Plaintiff decided to accept a position teaching conversational English at a summer camp in Poland from June 23 to August 27, 2019. Tr. 921. She apparently had done similar work years before. On June 6, 2019, Dr. Kuttner met with Plaintiff, finding her "anxious about . . . being able to teach. As characteristic of her OCD, she wants to be the best." Tr. 921. Dr. Kuttner had "serious reservations about her readiness to travel." Tr. 922. He noted that Plaintiff appeared "tired, sedated, slurring speech a bit, stumbling over words, pupils small, with mildly to moderately pressured speech, more tangential than her usual, mild flight of ideas, without abnormal ideation, no suicidal ideation." Tr. 921-22. Her "[a]nxiety level is such that I think she is continuing in relapse behavior." Tr. 922.

Dr. Kuttner met with Plaintiff on June 20, 2019, a few days before she left for Poland. Dr. Kuttner found that Plaintiff "appears anxious, worried expression, with tachycardia and elevated blood pressure, pupils normal size, not diaphoretic, with mildly to moderately pressured speech, tangential, mild flight of ideas." Tr. 924. Plaintiff did calm down "to a degree" during

the visit. Tr. 924. Plaintiff went to Poland but returned early (the record is unclear on when she returned).

As the Ninth Circuit has stated, "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (original emphasis) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.1989)). The same logic applies here. I conclude that Plaintiff's attempts to work do not undermine her testimony about her subjective symptoms.

The ALJ also cited "a variety of activities" as evidence contradicting Plaintiff's statement that "she is socially isolated." Tr. 24. The ALJ mentioned that in June 2015, Plaintiff "reported doing landscaping for a friend"; in October 2015, she "reported doing some volunteer work for senior citizens, cleaning and painting"; and "helped out neighbors in her condo complex." Tr. 24. The ALJ also found that Plaintiff "has been able to engage in a variety of activities despite her symptoms." Tr. 24. The ALJ stated that after Plaintiff's hospitalization in August 2014, she reported having a "great trip to North Dakota" in October 2014. Tr. 23. The ALJ also noted that Plaintiff had taken a week of classes at Brigham Young University in August 2018, which she enjoyed so much she forgot to take her medications for two days. Tr. 906. The ALJ also cited Plaintiff's job at Deseret Industries in April 2019.

I find that the activities cited by the ALJ are not clear and convincing evidence undermining Plaintiff's symptom testimony. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715,

12 -- OPINION AND ORDER

722 (9th Cir. 1998); *Hostrawser v. Astrue*, 364 F. App'x 373, 378 (9th Cir. 2010) (the plaintiff's occasional travel and "active lifestyle in which he can, among other things, shop, do chores, and use the computer" did not undermine the plaintiff's credibility on overall disability). Here, the ALJ did not show how the cited activities are "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. I conclude that the ALJ's finding on Plaintiff's subjective symptom testimony is not supported by clear and convincing evidence.

## II. The ALJ's Rejection of Dr. Kuttner's Opinion

In August 2019, Dr. Kuttner completed an evaluation form sent by Plaintiff's counsel. Tr. 925-28. Dr. Kuttner stated that he had been Plaintiff's mental health care provider since March 24, 2011, and had seen her "approximately monthly." Tr. 925. Her current diagnoses were PTSD, dysthymic disorder, and ADHD, with symptoms including "anxiety, panic attacks, depression, [and] distractibility." Tr. 925. Dr. Kuttner filled out check-box form on Plaintiff's limitations, finding that she had marked limitations in her ability to maintain attention and concentration for extended periods; ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to respond appropriately to changes in the work setting. Tr. 927. Dr. Kuttner commented on the form that "social anxiety adds to her concentration difficulties & affects work." Tr. 927. Dr. Kuttner also stated that he would expect Plaintiff "to need to take unscheduled breaks from even a simple, routine job, outside of a standard morning, lunch, and afternoon break due to exacerbations of her mental health symptoms." Tr. 928. Dr. Kuttner explained that Plaintiff "needs breaks to reduce anxiety -- hard to predict frequency & duration."

13 -- OPINION AND ORDER

Tr. 928. Dr. Kuttner commented on Plaintiff's ability to handle workplace stress, stating that she was "likely to have tremors, flush, sweat & potentially be in tears with even minor confrontation or frustration." Tr. 928. Finally, Dr. Kuttner affirmed that he would expect Plaintiff to miss "16 hours (the equivalent of two full workdays) or more per month from even a simple, routine job because of her impairments, symptoms, or medications and their side effects." Tr. 928. Dr. Kuttner commented it was "difficult to predict" how much work Plaintiff would miss, "but her anxiety indeed limits." Tr. 928.

The ALJ rejected Dr. Kuttner's findings on Plaintiff's limitations, finding that Dr. Kuttner did not provide specific findings to support "the moderate to marked limitations in understanding, remembering and applying information, interacting with others, or concentrating, persisting or maintaining pace." Tr. 25. The ALJ specifically objected to Dr. Kuttner's citation of Plaintiff's unsuccessful trip to Poland as an example of her limitations, stating that Plaintiff's "inability to continue working overseas teaching English does not suggest inability to engage in work," assuming the residual functional capacity found by the ALJ. Tr. 24.

"The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, and must provide specific and legitimate reasons for rejecting contradicted medical opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

14 -- OPINION AND ORDER

I conclude that the ALJ did not give sufficient weight to Dr. Kuttner's opinion, focusing on the check-box form rather than Dr. Kuttner's extensive treatment records from March 2011 until August 2019. Although Dr. Kuttner provided necessarily brief explanations for his findings in the check-box form, he based those findings on his years of treating Plaintiff, during which he and Plaintiff developed a close therapeutic relationship. As the Ninth Circuit explained, "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed.")). I conclude that the ALJ failed to comply with Ninth Circuit's requirement "to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments." *Lester v. Chater*, 81 F.3d 821, 832-33 (9th Cir. 1995). Because of this error, the ALJ also failed to give specific and legitimate reasons for rejecting Dr. Kuttner's opinion that Plaintiff would miss two or more days of work per month because of her mental impairments.

I note that Dr. Adler, the consulting psychologist, provided an opinion consistent with Dr. Kuttner's opinion, although not addressing functional limitations. Dr. Adler found Plaintiff to be credible, stating, "Observed behavior was consistent with the history that she gave, and showed more depression than anxiety, although the history suggests she can have quite significant anxiety and panic, with frequent ER visits." Tr. 867. Dr. Adler concluded that Plaintiff "has consistent and daily problems with mood and coping with distress, social isolation, and

motivation, difficulties with personal care and chores." Tr. 867.  Nonetheless, the ALJ gave great weight to Dr. Adler's opinion while discounting Dr. Kuttner's opinion.

I conclude that the ALJ erred in rejecting the opinion of Dr. Kuttner.  I also conclude that the ALJ's error was harmful.

### III. Remand for Further Proceedings or an Award of Benefits

When the ALJ has committed a harmful error, the court may modify or reverse the Commissioner's decision "'with or without remanding the case for a rehearing.'" *Garrison v. Colvin,* 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  To determine whether to remand for further proceedings or for an immediate award of benefits, the Ninth Circuit uses "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." *Id.* at 1020.  The court first determines whether the "'ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1020).  Second, if the ALJ has erred, the court determines whether the record has been fully developed, whether outstanding issues must be resolved before determining disability, and whether further administrative hearings would be useful.  *Id.* at 1101.  Third, if the court concludes "that no outstanding issues remain and further proceedings would not be useful," the court may "find the relevant testimony credible as a matter of law" and "determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.* (citations, quotation marks, and brackets omitted).  Even if a plaintiff satisfies the three-part test, the court retains discretion to remand for further proceedings if the record as a whole creates "serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, Plaintiff meets the first requirement of the credit-as-true test. As explained above, the ALJ made harmful legal errors when she failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony and Dr. Kuttner's medical opinion.

Plaintiff meets the test's second requirement. The record here is fully developed.

Plaintiff also meets the test's third requirement. If the improperly discredited evidence is credited as true, the ALJ would be compelled to find that Plaintiff is disabled. The vocational expert testified that a person with Plaintiff's impairments who would need to miss two or more days per month would not be employable in any job in the national economy. Tr. 62 (vocational expert testified that such an "absenteeism level may get a person six months but certainly not 12 before they're dismissed").

If a plaintiff meets the three requirements for the credit-as-true standard, remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020-21 (citations omitted). Here, there is no basis for serious doubt on whether Plaintiff is disabled. *See id.* at 1021. I therefore remand for an immediate award of benefits.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for an immediate calculation and award of benefits.

DATED: August 1, 2022.

                                                            s/Michael J. McShane

                                    MICHAEL J. McSHANE
                                    UNITED STATES DISTRICT JUDGE